**IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF COLORADO  
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02544-MSK-KLM

**KEVIN D. EVANS,**

        Plaintiff,

v.

**CENTRAL INTELLIGENCE AGENCY,**

        Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("CIA") Motion for Summary Judgment **(# 53)**, Mr. Evans' response **(# 56)**, and the CIA's reply **(# 57)**.

Mr. Evans[1] brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In May 2011, Mr. Evans made a FOIA request on the CIA seeking "copies of the photographs of Osama Bin Laden's deceased body taken during the raid in Abottabad, Pakistan." In an Amended Complaint **(# 40)** filed in March 2014, Mr. Evans narrowed his request to "one photograph of the CIA's choosing, taken of and depicting Osama (a/k/a Usama) Bin Laden

---

[1] Mr. Evans appears to be pursuing this case *pro se*, insofar as he has signed his pleadings and filings himself. The Court notes, without necessarily finding, that Mr. Evans' e-mail address on each pleading refers to a web domain belonging to the law firm of Seese, Evans, and Frankel, P.C., a named partner of which is Kevin D. Evans. Although *pro se* litigants are entitled to liberal construction of their pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the 10th Circuit has held that licensed attorneys appearing *pro se* do not enjoy that same benefit. *Mann v. Boatright*, 477 F.3d 1140, 1148 n. 4 (10th Cir. 2007). Ultimately, this Court need not dwell on whether Mr. Evans is entitled to the liberal construction afforded *pro se* parties, as the outcome of this proceeding would not change.

during or immediately after the May 2011 raid in Abottabad," subject to redactions by the CIA "to exclude confidential or state secret information."

Shortly after Mr. Evans commenced this action, the CIA moved to stay the action due to the pendency of litigation over a similar FOIA request in the District of Columbia, *Judicial Watch, Inc. v. U.S. Dept. of Defense*, 857 F.Supp.2d 44 (D.D.C. 2012). The Court granted the stay, with limited exceptions, pending final resolution of the *Judicial Watch* case. In April 2012, the District Court for the District of Columbia granted summary judgment in favor of the Government, finding that the CIA had properly invoked FOIA's Exemption 1 (permitting withholding of records "specifically authorized under . . . an Executive Order to be kept secret in the interest of national defense") in refusing to turn over the photographs. *Id.*, 857 F.Supp.2d at 55, *citing* 5 U.S.C. § 552(b)(1). The court found that the photographs in question were properly classified as "top secret" pursuant to Executive Order 13526 (2009), *id.* at 55-60, and that the CIA's contention that the release of the images "reasonably could be expected to cause exceptionally grave damage to the national security" was "comprehensive, logical, and plausible," *id.* at 60-64.

Judicial Watch appealed the denial to the Court of Appeals for the District of Columbia Circuit. On May 21, 2013, that court affirmed the trial court's grant of summary judgment, adopting essentially the same reasoning. *Judicial Watch, Inc. v. U.S. Dept. of Defense*, 715 F.3d 937 (D.C. Cir. 2013). Judicial Watch petitioned the Supreme Court for certiorari, but that request was denied in January 2014. *Judicial Watch, Inc. v. Dept. of Defense*, 134 S.Ct. 900 (2014) (mem.).

The CIA then filed the instant Motion for Summary Judgment **(# 19)** in this case. It

asserts essentially the same arguments and evidence it previously presented to the District Court for the District of Columbia and the D.C. Circuit. In response **(# 8)**, Mr. Evans does not directly address the reasoning of the *Judicial Watch* cases; rather, his argument here turns entirely on the fact that, in or about May 2011, CIA Director Leon Panetta made comments to the effect that he believed that "ultimately a photograph would be presented to the public," and that "I think we have to reveal to the rest of the world the fact that we were able to get him and kill him." Mr. Evans argues that Mr. Panetta's comments "create a genuine issue of fact" preventing summary judgment where "the Director of the Agency in question takes a position that disclosure would be forthcoming, only to be contradicted by a subsequent position advanced by the Agency in the face of a FOIA request."

The Court need not engage in recitations of the familiar summary judgment standard or extensive analyses of FOIA to resolve this matter; to the extent necessary, the Court fully adopts the reasoning of both *Judicial Watch* opinions. The sole question presented here is whether Mr. Panetta's predictions about future public access to the photographs, made in a television interview three days after the Abottabad raid, somehow creates a genuine dispute of fact as to an essential element of a challenge to an agency's invocation of FOIA Exemption 1.

As the *Judicial Watch* opinions note, the CIA need only show that the photographs were properly classified -- that is, that the procedural requirements for classification were met and that disclosure of the records could reasonably be expected to cause grave damage to national security). *Judicial Watch*, 857 F.Supp.2d at 55, 60. Mr. Panetta's comments do not bear on those questions. Obviously, Mr. Panetta's remarks do not address the procedural classification of the documents, and his stated belief that a photograph would eventually be released makes no

3

comment on the question of whether such a release would be undertaken regardless of its perceived effect on national security. Rather, it is obvious that Mr. Panetta was making a prediction about what was likely to happen given the public and political pressure he anticipated would surround the question. That prediction is entirely irrelevant to the question of whether the CIA's subsequent invocation of Exemption 1 to deny Mr. Evans' FOIA request was proper.[2]

---

[22] Moreover, the Court takes judicial notice of the fact that the very same source Mr. Evans relies upon for the text of Mr. Panetta's statement, www.nbcnews.com, published a story the day after Mr. Panetta's remarks with the headline "Obama decides not to release bin Laden death photo." http://www.nbcnews.com/id/42900991/ns/world_news-death_of_bin_laden/t/obama-decides-not-release-bin-laden-death-photo/ (May 5, 2011). That story stated:

> President Barack Obama has decided not to release photographs of al-Qaida leader Osama bin Laden's body, the White House said Wednesday.
>
> The announcement came after a senior administration official told NBC News of the decision not to release post-mortem photos and Obama revealed the decision during an interview Wednesday with CBS' "60 Minutes."
>
> The White House had been weighing the release of a photo, in part to offer proof that bin Laden was killed during a raid on his compound early Monday. However, officials had cautioned that the photo was gruesome and could prove inflammatory.
>
> "It is important for us to make sure that very graphic photos of somebody who was shot in the head are not floating around as an incitement to additional violence or as a propaganda tool. That's not who we are. We don't trot out this stuff as trophies," Obama told CBS News, according to White House spokesman Jay Carney.
>
> "We don't need to spike the football. And I think that, given the graphic nature of these photos, it would create some national security risk," the president said, according to Carney's account.

Thus, to the extent Mr. Evans contends that Mr. Panetta's statements were somehow bound the CIA to release one or more photos, it is clear that Mr. Panetta's comments were premature and subsequently overruled by Mr. Panetta's boss. Thereafter, the official position of the United

4

Accordingly, the CIA's Motion for Summary Judgment **(# 53)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the CIA on all claims in this action.

Dated this 2nd day of September, 2014.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge

---

States government became that the release of the photographs would indeed pose a national security risk, the very assertion they made here and in *Judicial Watch*.